(C. D. 752)

MRS. NORMAN R. CROZIER v. UNITED STATES

United States Customs Court, Third Division

(Decided March 26, 1943)

*Norman R. Crozier, Jr.,* for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil, William J. Vitale,* and *Alfred A. Taylor, Jr.,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed by the collector at New Orleans on an importation of merchandise .covered by a baggage declaration, the merchandise having been imported in the baggage of a returning resident. At the trial the baggage declaration was received in evidence and marked exhibit 1. The items described on the declaration are as follows:

| | |
|---|---|
| 1 dozen silver forks } | |
| 2 dozen silver spoons } ------------------------- | $75. 00 |
| 1 man's tie----------------------------------- | . 85 |
| 4 wooden birds-------------------------------- | 1. 35 |
| Incidentals----------------------------------- | 10. 00 |
| Antiques as per list attached. | |

A list of 75 items is attached to the papers in the case but, as it is written in red ink, it was probably prepared by Government officers. It was received in evidence and marked exhibit 2. This list includes the articles which are described in the declaration, but the items "one man's tie," "4 wooden birds," and "incidentals" have been stricken out in black ink and the notation "Pa. 1798" inserted opposite those items. That notation indicates that the articles were returned free of duty under the $100 exemption in paragraph 1798.

The plaintiff describes in the protest 43 items which are claimed to be free of duty under paragraph 1811 of the Tariff Act of 1930 as artistic antiquities produced prior to the year 1830.

The plaintiff claims also that some of the items were appraised at too high a value, but that is an issue which should have been brought up on reappraisement and is, not subject to consideration under the protest filed.

Another claim made in the protest is that free entry of merchandise of the value of $100 should have been allowed by the collector. The protest does not cite the paragraph under which this claim is made, but protestant evidently refers to paragraph 1798, as amended in section 36 of the Customs Administrative Act of 1938, under which the three items mentioned above were returned.

Further claims in the protest are that penalties were imposed by the collector arbitrarily and unreasonably and that the collector arbitrarily and unreasonably forfeited the articles regardless of whether or not the same were in one package.

In addition to the description of the articles, exhibit 2 shows the rate and amount of duty assessed on each article. The only assessment in the nature of a penalty mentioned is "Plus 25%, Sec. 489." That section imposes an additional duty at the rate of 25 per centum ad valorem if any article described in paragraph 1811 and imported for sale is rejected as unauthentic in respect to the antiquity claimed as a basis for free entry. The collector assessed the additional duty on all of the articles except the following:

7 Table scarfs
2 Cigarette boxes
1 Antique bellows
1 Sheraton chest
4 Salt cellar boxes
2 Sheffield candle holders
17 Service sets
2 Tablespoons
1 Painting on glass
Forks and spoons
Prints over 20 years

The first trial of the case was held at Dallas, Tex., where the importer resides, and the plaintiff, Mrs. N. R. Crozier, was called to the stand. The witness testified that she was called to London, England, in the summer of 1938 by the severe illness of her daughter who resides in London, and she remained there for 3 months; that she was trying to get her daughter and children home with her and was nearly ill herself from nursing her daughter; that she remained there until a few days before war was declared; that she had been ill on the boat and just before arrival at New Orleans she started to write on her declaration a list of the articles in her baggage and her hand trembled so that another passenger asked to do it for her; that the passenger told her not to make out a list of the antiques but to tell the customs officers orally about them, which she did; that the customs officers told her that the goods would have to go to the customhouse; that her husband was ill and she told them she was in a

hurry to get back home, so she would leave the goods with them; that if there was any duty to be paid she asked the customs officers to notify her; that she thought there would be no duty on the articles as she bought them all in good faith; that weeks passed and the things did not arrive and the customs officers did not answer her letters; that about 6 months afterwards she was informed that she was being investigated and that she had said she was going to sell the articles; that the only thing she remembered about saying that she would sell the articles was before leaving England when she told her son-in-law, who is an architect in England, that she was afraid she would have to sell these things to help her daughter; that she was never engaged in any sort of business in her life; that one time one of her friends liked certain articles she had bought and she sold them to her friend; that she might have sold some second-hand furniture; that she had never been a dealer in antiques but had purchased them for herself; that she had never studied antiquities but had a book on hallmarks on silver in her library, but had not mastered anything.

The witness described a number of the articles which she believed were old, but the judge presiding at the trial held that the witness was not qualified to give expert testimony as to whether or not the articles were produced prior to the year 1830. Some of the articles the witness described were returned free of duty by the customs officers.

The witness testified further that the customs officers did not allow her an exemption of $100; that she was a returning resident of the United States and brought the goods with her as a part of her baggage; that the notations in red ink on the sheets containing a list of the articles (exhibit 2) were not written by her; that the total "$150.80" was written by someone else (this total referred to has been stricken out and $185.30 inserted underneath); that she left to the customs officers the task of making the list of the articles; that one of her friends left some silver spoons with her daughter and due to the war she did not return; that she (the witness) brought them to the United States in her suitcase and listed them in her baggage declaration; that after she returned to Dallas the owner of the spoons came and took them away; that later a customs agent by the name of Offutt called and asked if she owned the spoons and she told him she brought them for a friend; that he told her she would have to pay $39.50 and, later, she was required to give the customs officer the silver and pay an additional $75; that she never got the money back from her friend. The customs officers' notation on exhibit 2 shows that the duty on the forks and spoons was $37.50.

On cross-examination the witness testified that she did not think there was anything wrong in bringing the silver in, as the articles

were a gift at a wedding; that her friend had the silver and left it with her daughter in London to hold for her; that when the witness was leaving, her daughter stated that she wished that she (the witness) would take the silver and deliver it to the friend in the United States; that on previous trips to Europe her husband had accompanied her and took charge of the customs matters; that she had sold some little pieces and a vegetable service to one of her friends about 3 or 4 years previously; that she did not know whether those things had been declared as free merchandise as her husband took charge of making out the list for customs purposes; that she remembered being visited by Mr. Offutt and she told him that her failure to declare the merchandise at the time of entry was the result of poor advice given her by a fellow passenger to the effect that she could declare the merchandise free of duty orally; that she did not remember telling Mr. Offutt that she believed that the articles were antiques notwithstanding the fact that they were not produced prior to 1830; that in their entry through the port of New York they never brought back merchandise valued at more than $200; that she did not know anything about having entered any merchandise at New York as antiquities; that her daughter is not in any business in England and her son-in-law is an architect; that neither one of them sold the articles she brought into the country.

The method of purchase of the articles was described by the witness as follows:

X Q. You just went around and purchased them?—A. As I said before, everybody was frightened with the war, and the only diversion I had was to get to where I could change my mind, and I was near High Street, and most of the things I bought, was from one or two people. That is the reason I got things so terribly cheap.

The case was then transferred to New Orleans to take the testimony of customs agent Offutt, and, when called for trial there, counsel for the defendant announced that the customs agent was in Puerto Rico and the case was continued. At the next trial in New Orleans the case was transferred to Dallas, and, when called for trial at that port, the plaintiff recalled Mrs. Crozier who was asked and answered the following questions:

R. Q. You remember the list of articles you are claiming on here?—A. Yes.
R. Q. Will you state whether or not at the time of the entry, you brought those articles into the United States, at New Orleans, for the purpose of sale?—A. No, I did not. Things were so terrible over there—My daughter—I didn't buy them for sale, but in going on the boat when war was declared, I told my son-in-law, that I thought in the back of my head, I thought maybe I might sell them to help her, but I certainly had no idea of it in shopping, and at that time there was nothing in the back of my head, I didn't know there would be any reason to do it. I bought them just like you buy at home, if you can see the——
Judge KINCHELOE. Your answer is that you never bought with the intention of resale.
The WITNESS. No.

The witness was asked the following questions on cross-examination:

R. X Q. Mrs. Crozier, you say when you obtained these articles in England, at the time, you felt that you might want to sell them, and you thought there was nothing wrong in doing that?—A. Yes.

R. X Q. I told you, now there is nothing wrong in selling anything you know, but the fact remains, under the Tariff Law, I wish to advise you that when you bring merchandise in for the purpose of sale, and it is later rejected by the Customs Officials as to its antiquity, you are subject to additional duties. We are not here to punish you in any way. This is merely a civil matter, not a criminal——

Judge KINCHELOE. This case, the subject of this case is the additional duties, and that is why you have the right to bring suit in this court, to see whether the Government Officials were right or not.

Mr. VITALE. This is your action to try to recover the duty. This is not a criminal action. You had a conversation with Mr. Offutt, the Special Agent, with reference to the merchandise you brought over, and which is involved in this case, did you not Mrs. Crozier?

The WITNESS. Yes.

\*          \*          \*          \*          \*          \*          \*

By Mr. VITALE.

R. X Q. When you spoke with Mr. Offutt, did he ask you if you intended to sell the so called antiques, when you brought them into this country? Do you remember him asking you that question?—A. I do not. Very likely he did, though I cannot remember exactly.

R. X Q. Just see if you can remember, as best you know how.

\*          \*          \*          \*          \*          \*          \*

The WITNESS. I am sure I think I told him and others that if my daughter needed that money that I might sell some of them, if my daughter needed that money. We were all very much upset.

R. X Q. In other words, when you brought these so called antiques over you had decided when you brought them over you would sell whatever you could, and keep whatever you could?—A. Yes, that I had in mind, but I never had any idea of having a shop or anything like that.

\*          \*          \*          \*          \*          \*          \*

By Mr. CROZIER.

R. Q. I want to ask you the question whether Mr. Offutt questioned you in regard to the so called antiques or articles?—A. I don't think he did. No, he didn't know anything about them.

R. Q. He didn't know there was anything wrong in reference to it?—A. I don't think he did. I didn't.

The claim that the articles entered as antiques, which were assessed with duty by the collector, are artistic antiquities produced prior to the year 1830 and free of duty under paragraph 1811 is not supported by any competent evidence. The collector returned some of the articles free of duty under paragraph 1811 and the prints over 20 years old were returned free of duty under paragraph 1629. The evidence in the case does not establish that the collector erred in classifying any of the other articles. The claim under paragraph 1811 is therefore overruled.

The claim in the protest that the collector erred in assessing penalties on the articles is evidently based on the collector's action in assessing

additional duties under the provision in section 489, the pertinent parts of which read as follows:

\* \* \*. If any article described in paragraph 1811 and imported for sale. is rejected as unauthentic in respect to the antiquity claimed as a basis for free entry, there shall be imposed, collected, and paid on such article, unless exported under customs supervision, a duty of 25 per centum of the value of such article in addition to any other duty imposed by law upon such article.

That provision imposes additional duty at the rate of 25 per centum ad valorem on all merchandise entered free of duty as artistic antiquities and rejected as unauthentic in respect to the antiquity claim *when such merchandise is imported for sale.* It must be presumed, from the act of the collector in imposing additional duties on the articles concerning which he rejected the antiquity claim, that he found that they were imported for sale. The action of the collector is presumed to be correct and the burden is cast on the plaintiff to overcome that presumption of correctness by evidence submitted before the court. The importer testified that when she bought the articles she did not intend to sell them but she afterwards changed her mind because she told her son-in-law when she left England that she might sell them if necessary to help her daughter. The statute, above quoted, imposes the additional duty on merchandise "imported for sale" and evidently refers to the intent of the importer at the time the goods were entered. The intention at the time of purchase, therefore, is immaterial. We are of opinion that the evidence in the record does not establish that the articles were not imported for sale. Accordingly, the claim that the collector erred in assessing additional duties at the rate of 25 per centum ad valorem under section 489 must be, and hereby is, overruled.

The further claim that the plaintiff is entitled to an exemption in duty on merchandise to the value of $100 evidently relates to the provision in paragraph 1798, as amended in section 36 of the Customs Administrative Act of 1938 (52 Stat. 1077, 1093), although the provision is not cited in plaintiff's protest. The pertinent parts of that paragraph read as follows:

\* \* \*: *Provided further,* That up to but not exceeding $100 in value of articles (including distilled spirits, wines, and malt liquors aggregating not more than one wine gallon and including not more than one hundred cigars) acquired abroad by such residents of the United States as an incident of the foreign journey for personal or household use or as souvenirs or curios, but not bought on commission or intended for sale, shall be free of duty: \* \* \*.

A reference to the declaration (exhibit 1) shows that the importer declared merchandise to the value of $87.20, evidently intending the same to come within the $100 exemption. The silver forks and spoons, valued at $75, which belonged to another, were not allowed within the exemption, which left merchandise on the declaration of a value of $12.20 upon which free entry was granted under paragraph

1798. The plaintiff claims that she is entitled to an exemption of merchandise of a value of $100. She evidently intends to claim that if she is not entitled to the exemption on the silver forks and spoons which were enumerated on her declaration, she should receive a like deduction on the goods which she told the customs officers were antiques, to replace the forks and spoons which were disallowed from her declaration, and also a further deduction of the so-called antiques to bring the total deduction up to the $100 limitation. In other words, she manifestly claims that she should have a deduction of $87.80 on the things which she told the customs officers were antiques.

The provisions of paragraph 1798, above-quoted, contain the words "but not bought on commission or *intended for sale.*" Her intent at the time of landing would bar the free entry of the so-called antiques under the provisions of paragraph 1798 because she had in mind the sale of those articles. The claim under paragraph 1798 is therefore overruled.

The only other claim in the protest not heretofore considered is that "the collector of customs has arbitrarily and unreasonably forfeited said articles." Although we are of the opinion that the importer did not intend to defraud the revenue of the United States, having acted in ignorance of the law, that claim will have to be dismissed because the jurisdiction of the United States Customs Court is limited to the actions prescribed in section 514 of the Tariff Act of 1930, which does not include actions relating to the legality of forfeitures. Such an action must be brought before another forum. *Alfred A. Disegni* v. *United States*, 52 Treas. Dec. 458, T. D. 42509.

Judgment will be entered in favor of the defendant.